UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. WHORTON,

Plaintiff,

v.

CHARLES COY, *et al.*,

Defendants.

Case No. 24-cv-10167
Honorable Jonathan J.C. Grey
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
(ECF NO. 31)**

### I.    Introduction

Plaintiff James M. Whorton, a prisoner proceeding pro se, sues corrections officers Charles Coy, Edward Guse, Edward Heinonen, Girbraun Hopson, James Chenault, and Rodney Lee under 42 U.S.C. § 1983, in their official and individual capacities.  ECF No. 1.  The Honorable Jonathan J.C. Grey referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 17.  Defendants move for summary judgment.  ECF No. 31.  The Court **RECOMMENDS** that their motion be **GRANTED**.

## II.     Background

Whorton claims that defendants used excessive force against him in violation of the Eighth Amendment when they physically and sexually assaulted him in August 2022.  ECF No. 1, PageID.5.[1]  As described more fully in the analysis below, Whorton made an unprovoked assault on Coy, who punched Whorton in the face.  ECF No. 31-10 at 0:24-0:27.  Coy and Guse brought Whorton to the ground as he continued to struggle.  *Id.* at 0:26-0:29.  During the struggle, Hopson, Heinonen, Chenault, Lee, and four other corrections officers responded to the incident and helped restrain Whorton.  *Id.* at 0:29-1:33.

Defendants brought Whorton to a standing position, and Chenault and Hopson escorted Wharton to his cell.  ECF No. 31-11 at 0:29-0:50.  At the entrance to the cell, Whorton planted his feet and resisted Chenault, Hopson, and Guse's efforts to push him inside.  *Id.* at 0:52-0:53.  Whorton ultimately "fell" inside the cell onto to the floor.  *Id.* at 0:53-0:58.  Chenault, Hopson, and Guse knelt over Whorton inside the cell and repositioned him

---

[1] Although Whorton stated during his deposition that he also claims retaliation, he concedes that he asserted no retaliation claim in his complaint and does not pursue one now.  ECF No. 31-9, PageID.216; ECF No. 44, PageID.301.  Thus, the Court does not address retaliation.

before bringing him to his feet.  *Id.* at 0:58-1:42.  A group of officers then escorted Whorton to a secure shower cell.  *Id.* at 1:42-2:07.

Whorton was sent to a hospital, where medical providers determined that his nose was broken.  ECF No. 31-13, PageID.235-236.  He was found guilty during a misconduct hearing of assault and battery on staff.  ECF No 31-15; ECF No. 31-9, PageID.218.  Whorton also pleaded guilty to state-court charges for assaulting Coy.  ECF No. 31-2, PageID.183; ECF No. 31-9, PageID.219.

## III.   Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material

3

fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (cleaned up). "[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion."  *Id.* (cleaned up).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560.

## B.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

4

known.  *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008).

Determining whether government officials are entitled to qualified immunity

generally requires two inquiries: (1) whether, viewing the facts in the light

most favorable to the plaintiff, the plaintiff has shown that a constitutional

violation occurred and (2) whether the right was clearly established at the

time of the violation.  *Id.*  The court may address these two prongs in either

order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Whether a plaintiff can prove an Eighth Amendment excessive force

violation turns on an assessment of subjective and objective components.

*Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).  The subjective

component addresses the officials' state of mind, and whether "force was

applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm."  *Id.* (cleaned up).  When determining

whether the subjective component is met, courts consider (1) the need for

the use of force, (2) whether the force used was proportional to the need

for force, (3) the extent of the plaintiff's injuries, (4) the threat reasonably

perceived by the prison official, and (5) efforts made to temper the severity

of the force.  *Id.* at 581.

"The objective component requires the pain inflicted to be sufficiently

serious.  This component requires a contextual investigation, one that is

5

responsive to contemporary standards of decency." *Id.* at 580 (cleaned up). But even when the inmate suffers no serious injury, prison officials who use force maliciously to cause harm violate the Eighth Amendment. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (cleaned up).

The Court evaluates the events at issue in two segments: (1) Whorton's assault on Coy and the resulting takedown and restraint and (2) Whorton's escort to his cell and then to the shower cell. In neither instance can Whorton satisfy the subjective component to show an Eighth Amendment violation.

Two videos captured the first segment of events. A mounted surveillance video captured Whorton, wearing a yellow jacket, and three other prisoners standing in a dayroom outside an office doorway. ECF No. 31-10 at 0:10-0:24. As Coy exited the office and passed between Whorton and another prisoner, Whorton lunged at him from behind and punched him in the side of his head. *Id.* at 0:24-0:25; ECF No. 31-4, PageID.194. Whorton quickly advanced on Coy and punched him in the chest as Coy turned and punched Whorton in the face. ECF No. 31-10 at 0:25-0:27. While Coy and Whorton traded blows, Guse ran from the office to assist

6

Coy.  *Id.*; ECF No. 31-4, PageID.194.  Guse tackled Whorton from behind, and he and Coy brought a still-struggling Whorton to the floor.  ECF No. 31-10 at 0:26-0:30; ECF No. 31-5, PageID.198.

Eight more corrections officers, including Hopson, Heinonen, Chenault, and Lee, entered the unit to assist Coy and Guse.  ECF No. 31-10 at 0:30-0:37; ECF No. 31-3; ECF No. 31-6; ECF No. 31-7; ECF No. 31-8.  Five of those officers, along with Coy and Guse, crouched around Whorton to restrain him.  ECF No. 31-10 at 0:30-0:37.  Whorton continued to struggle and resisted being placed in restraints while on the floor.  ECF No. 31-5, PageID.198.  Although unclear given the distance at which the video was taken, force may have been used by one of the officers furthest from the camera, near Whorton's head.  That officer quickly moved his arm back and forth several times over a 15-second span, as if striking Whorton.  ECF No. 31-10 at 0:45-1:02.  A handheld video that started recording near the end of this 15-second span captured audio of an officer ordering Whorton to stop resisting.  ECF No. 31-11 at 0:01-0:05.  No further use of force while Whorton was on the ground is visible in either video.  *Id.* at 0:01-0:29; ECF No. 31-10 at 0:29-1:33.  About one minute lapsed between Guse tackling Whorton and the officers bringing Whorton to a standing position after restraining him.

No reasonable juror could conclude from these videos that defendants used force maliciously. Whorton instigated the disturbance by assaulting Coy in the presence of three other inmates. Coy responded by punching Whorton in self-defense as Whorton advanced on him. The other defendants likewise responded to the attack by tackling Whorton and restraining him on the ground. The uncontroverted evidence shows that Whorton struggled as Guse and Coy brought him to the ground and continued to struggle even as the other defendants helped subdue and restrain him. *See* ECF No. 31-10 at 0:26-0:30; ECF No. 31-11 at 0:01-0:05; ECF No. 31-5, PageID.198. Although one of the officers may have struck Whorton when he was on the ground, they were isolated blows over a 15-second span and were applied to obtain Whorton's compliance, as the handheld video captured another officer ordering him to stop resisting. *See* ECF No. 31-10 at 0:26-0:30; ECF No. 31-11 at 0:01-0:05. Force was thus applied proportionally in a good-faith effort to bring Whorton under control.

This conclusion aligns with *Bailey v. Golladay*, in which Bailey (an inmate) rushed toward Golladay (a corrections officer), who was searching Bailey's cell. 421 F. App'x 579, 580 (6th Cir. 2011). Golladay forced Bailey to the floor in the hallway outside the cell and then pinned him up against the wall and began punching his ribs and ramming his head into Bailey's

8

abdomen.  *Id.*  Bailey resisted Golladay's efforts to subdue him and only

stopped fighting when four more officers restrained him.  *Id.*  According to

Bailey, the five officers immobilized him on his stomach but continued to

punch him in the face, head, and back.  *Id.*  The Sixth Circuit affirmed the

district court's conclusion that no Eighth Amendment violation occurred:

> To the extent that the defendants Golladay, Forrest, Mahar, Storey and Duvall were acting to bring Bailey under control, this Court completely agrees with the district court. Bailey instigated the disturbance in the cell block area, which involved several other inmates and resulted in injuries to four corrections officers.  The disturbance could have easily escalated, but the corrections officers were able to quash the violence quickly and effectively.  To the extent that the corrections officers used force to subdue and restrain Golladay, that use of force was made by the corrections officers in a good faith effort to maintain discipline.  It is clear that the corrections officers only used as much force as necessary and reasonably calculated to respond to the reasonable threat perceived by the corrections officers.

*Id.* at 582.

Consider also *Davis v. Agosto*, in which six officers were tasked with

placing Davis in four-point restraints.  89 F. App'x 523, 524 (6th Cir. 2004).

One officer held a riot shield against Davis's cell door as others opened the

door.  *Id.*  Davis slipped past the riot shield and ran into the hallway.  *Id.*

One officer tackled Davis and brought him to the ground, and Davis tried to

hit him.  *Id.*  Two other officers responded by striking Davis with their

batons.  *Id.*  Together, the six officers placed Davis in handcuffs.  *Id.* at

9

525-26.  The Sixth Circuit again found no Eighth Amendment violation, holding that the force was "appropriate, if not indispensable, under the circumstances."  *Id.* at 527.  The court found that the officers did not maliciously inflict pain, instead emphasizing that they "had no way of knowing what direction matters would take" and that, "faced with such sudden wrongful and quite possible harmful conduct," they did "not have the luxury of hindsight and reflection."  *Id.* (cleaned up).

Whorton contends that the amount of force used was "far and beyond" what was needed to restrain him, as defendants struck him with their knees and elbows, punched him, put him in a choke hold, and gouged his eyes.  ECF No. 44, PageID.301, 303.  He also maintains that he was suffering from a "mental health crisis" when he assaulted Coy.  *Id.*, PageID.301, 305.  Yet Whorton offers no evidence supporting the level of force he describes or that he has a mental illness.  *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."); *Alexander*, 576 F.3d at 558 (a party opposing summary judgment "must make an affirmative showing with proper evidence").  Although Whorton's response references an affidavit, none is attached or otherwise included in the record.

10

Whorton also argues that six corrections officers subduing one inmate constitutes excessive force.  ECF No. 44, PageID.301.  The Court disagrees.  Whorton is 6'1" and weighs 207 pounds.  ECF No. 31-2.  That it took six or seven officers to restrain his arms, legs, and torso as he struggled is not unreasonable.  *See Bailey*, 421 F. App'x at 582 (five officers' efforts to restrain the plaintiff were reasonable); *Davis*, 89 F. App'x at 526-27 (six officers' efforts to restrain the 6'3" and 245-pound plaintiff were reasonable).  Apart from the officer who struck Whorton several times to obtain compliance, the others simply applied enough force to immobilize Whorton.  *See* ECF No. 31-10 at 0:32-1:35; ECF No. 31-11 at 0:01-0:32.

And because defendants had to make split-second decisions in the heat of the moment, the Court declines to second-guess their judgment regarding the appropriate number of officers to respond to Whorton's aggression.  *See Johnson v. Sootsman*, 79 F.4th 608, 618 (6th Cir. 2023) ("[W]hile judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury.  They must make quick decisions in the heat of the moment.  So we defer to their decisions and avoid unreasonable post hoc judicial second-guessing of their conduct."); *Burnett v. Griffith*, 33 F.4th 907, 913 (6th Cir. 2022) ("[Defendant] had to take split-second action in response to Burnett's unexpected attempt to

break free, and we must grant that split-second decision wide-ranging deference." (cleaned up)).

The Court turns to the second segment of events.  Once Whorton was subdued, he was brought to a standing position.  ECF No. 31-11 at 0:29-0:36.  Chenault and Hopson flanked Whorton as they escorted him to his cell, with Hopson on Whorton's left side and Chenault on his right.  *Id.* at 0:39-0:50; ECF No. 31-3, PageID.190; ECF No. 31-7, PageID.206.  Guse opened the cell door, and Whorton walked in a doubled-over position toward the cell.  ECF No. 31-11 at 0:39-0:52; ECF No. 31-5, PageID.198.  At the threshold of the cell, Whorton planted his feet and pushed back against Chenault and Hopson when they tried to bring him inside the cell.  ECF No. 31-11 at 0:52-0:53; ECF No. 31-3, PageID.190; ECF No. 31-5, PageID.198; ECF No. 31-7, PageID.206.  Guse assisted Chenault and Hopson in pushing Whorton inside his cell.  ECF No. 31-11 at 0:53-0:54.  Once the officers dislodged him, Whorton's resistance propelled him inside the cell, where he hit his head on the bedframe and fell to the floor.[2]  *Id.* at 0:53-0:58; ECF No. 31-3, PageID.190; ECF No. 31-5, PageID.198; ECF No. 31-7, PageID.206.

---

[2] Although Whorton contends that defendants "flat out lied about [him] falling and striking his head on the bunk," he again offers no evidence in support of his view.  ECF No. 44, PageID.304.

12

Chenault, Hopson, and Guse knelt over Whorton inside the cell, and an officer ordered Whorton to stop resisting.  ECF No. 31-11 at 0:58-1:36. No use of force is visible in the video, as there is no sign that any officer struck, kicked, or otherwise injured Whorton.  *Id.*  As Whorton lay prone on the floor, Chenault, Hopson, and Guse lifted him by the shoulders and feet to reposition him before they brought him to a standing position.  *Id.* at 1:37-1:42; ECF No. 31-3, PageID.190; ECF No. 31-5, PageID.199; ECF No. 31-7, PageID.206.  A group of officers escorted Whorton to the secure shower cell, with Hopson on Whorton's left side, Chenault on his right, and Guse behind him.  *Id.* at 1:42-1:57; ECF No. 31-3, PageID.190-191; ECF No. 31-5, PageID.199; ECF No. 31-7, PageID.207.  Heinonen opened the door to the shower cell, and Chenault and Hopson secured Whorton inside. ECF No. 31-11 at 1:57-2:07; ECF No. 31-3, PageID.191; ECF No. 31-6, PageID.202; ECF No. 31-7, PageID.207.

These events document only one use of force: Chenault, Hopson, and Guse's efforts to bring Whorton inside his cell.  Chenault, Hopson, and Guse used a proportional amount of force to push Whorton into his cell when he planted his feet and resisted them.  Whorton's own resistance is what caused him to slingshot inside with enough force to fall headlong onto the bedframe and floor.  Whorton offers no countervailing evidence or

13

argument.  The only evidence thus shows that Chenault, Hopson, and Guse applied the sole use of force to regain control of Whorton, and no reasonable jury could conclude that they acted maliciously.

Whorton's allegations that one or more defendants sexually assaulted him by "digitally raping" him are completely unfounded.  *See* ECF No. 1, PageID.5; ECF No. 44, PageID.301.  He offers no support for his allegations, and the existing evidence shows that no sexual assault occurred.  All defendants denied sexually assaulting Whorton.  ECF No. 31-3, PageID.191; ECF No. 31-4, PageID.194; ECF No. 31-5, PageID.199; ECF No. 31-6, PageID.202; ECF No. 31-7, PageID.207; ECF No. 31-8, PageID.210.  And the videos captured no sexual assault.  ECF No. 31-10; ECF No. 31-11.

## IV.   Conclusion

The Court thus **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED** (ECF No. 31).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 22, 2026

14

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 22, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager

16